UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

_____

**SUSIE J. ODOGBA**
497 E. Welsh Road
Wales, WI  53183

        Plaintiff,

                                     Case No.:

   v.

**STATE OF WISCONSIN**
**DEPARTMENT OF JUSTICE**
114 East State Capitol
Madison, WI  53707-7857

**STATE CRIME LABORATORY-MILWAUKEE**
**DIVISION OF LAW ENFORCEMENT SERVICES**
1578 South 11th Street
Milwaukee, WI 53204

**J.B. VAN HOLLEN**
**KEVIN M. ST. JOHN**
114 East State Capitol
Madison, WI  53707-7857

        Individually and in their official capacities

**BONNIE L. CYGANEK**
**BRIAN R. O'KEEFE**
**DAVID B. ZIBOLSKI**
**KEVIN E. JONES**
**MARY K. CASEY**
**JANA L. CHAMPION**
17 West Main Street
Madison, WI  53707-7857

        Individually and in their official capacities

and

1

**EVA M. LEWIS**
1578 South 11th Street
Milwaukee, WI 53204

      Individually and in her official capacities

<strong>JURY TRIAL DEMANDED</strong>

      Defendants.

---

**COMPLAINT**

---

NOW COMES Plaintiff, Susie J. Odogba, by her attorney, Stephanie M. Brown of Jeffrey S. Hynes & Associates, S.C., and hereby alleges as follows:

## I. INTRODUCTION

1.     This is an action by the Plaintiff for violations by the Defendants under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et. seq. ("Title VII"), the Civil Rights Act of 1991, 42 U.S.C. §1981, et seq. ("CRA of 1991"), 42 U.S.C. §1983, et seq., 42 U.S.C. §1985, et seq., and 42 U.S.C. §1986, et seq., brought to secure legal and equitable relief for such violations and the injuries inflicted on the Plaintiff by the Defendants when Defendants imposed terms and conditions of employment on Plaintiff that it did not impose on white employees and employees who did not raise and/or file discrimination complaints against the Defendants, when the Defendants suspended Ms. Odogba's employment, and when Ms. Odogba's employment was terminated by the Defendants.

## II. JURISDICTION AND VENUE

2.     Jurisdiction of this court over the Plaintiff's claims under Title VII is invoked pursuant to 42 U.S.C. §2000e-5(f)(3).

3.     Jurisdiction of this court over the Plaintiff's claims under the CRA of 1991, as amended, is invoked pursuant to 28 U.S.C. §1331 .

4.     Jurisdiction of this court over the Plaintiff's claims under 42 U.S.C. §1983 is invoked pursuant to 28 U.S.C. §1331.

5.     Jurisdiction of this court over the Plaintiff's claims under 42 U.S.C. §1985 is invoked pursuant to 28 U.S.C. §1331.

6.     Jurisdiction of this court over the Plaintiff's claims under 42 U.S.C. §1986 is invoked pursuant to 28 U.S.C. §1331.

7.     This action properly lies in this district because the claim arose here, the Defendants' business is located here, and the unlawful employment practices alleged herein were committed in this district, within the meaning of 42 U.S.C. §2000e-5(f)(3), and pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

8.     Plaintiff, Susie J. Odogba ("Ms. Odogba" or "Plaintiff"), is an adult female, African American citizen and resident of the state of Wisconsin, who resides in Wales, Wisconsin.

9.     Defendant, State of Wisconsin, Department of Justice, is a public sector employer within the meaning of the Civil Rights Acts of 1964, as amended, and has the capacity to sue and be sued in this Court.

10.     Defendant, State Crime Laboratory – Milwaukee, Division of Law Enforcement Services, is a public sector employer within the meaning of the Civil Rights Acts of 1964, as amended, and has the capacity to sue and be sued in this Court.

11.     Defendant, J.B. Van Hollen, on information and belief, is an adult citizen and resident of the State of Wisconsin and was employed as the Wisconsin Attorney General at all times relevant in this case. As such, he was one of the individuals who imposed discriminatory and retaliatory terms and conditions on the Plaintiff, and was involved in the decisions to suspend and/or terminate Plaintiff's employment. At all times material hereto, he was acting under color of the authority of state law. He is a party in both his individual and official capacities.

12.     Defendant, Kevin M. St. John, on information and belief, is an adult citizen and resident of the State of Wisconsin and was employed as the Wisconsin Deputy Attorney General at all times relevant in this case. As such, he was one of the individuals who imposed discriminatory and retaliatory terms and conditions on the Plaintiff, and was involved in the decisions to suspend and/or terminate Plaintiff's employment. At all times material hereto, he was acting under color of the authority of state law. He is a party in both his individual and official capacities.

13.     Defendant, Bonnie L. Cyganek, on information and belief, is an adult citizen and resident of the State of Wisconsin and was employed as the Human Resources Manager and Administrator, Division of Management Services at all times relevant in this case. As such, she was one of the individuals who imposed discriminatory and retaliatory terms and conditions on the Plaintiff, and was involved in the decisions to suspend and/or terminate Plaintiff's employment. At all times material hereto, she was acting under color of the authority of state law. She is a party in both her individual and official capacities.

14.     Defendant, Brian R. O'Keefe, on information and belief, is an adult citizen and resident of the State of Wisconsin and was employed as the Administrator, Division of Law Enforcement Services at all times relevant in this case. As such, he was one of the individuals who

4

imposed discriminatory and retaliatory terms and conditions on the Plaintiff, and was involved in the decisions to suspend and/or terminate Plaintiff's employment. At all times material hereto, he was acting under color of the authority of state law. He is a party in both his individual and official capacities.

15.     Defendant, David B. Zibolski, on information and belief, is an adult citizen and resident of the State of Wisconsin and was employed as the Deputy Administrator, Division of Law Enforcement Services at all times relevant in this case. As such, he was one of the individuals who imposed discriminatory and retaliatory terms and conditions on the Plaintiff, and was involved in the decisions to suspend and/or terminate Plaintiff's employment. At all times material hereto, he was acting under color of the authority of state law. He is a party in both his individual and official capacities.

16.     Defendant, Kevin E. Jones, on information and belief, is an adult citizen and resident of the State of Wisconsin and was employed as the Crime Laboratory Director at all times relevant in this case. As such, he was one of the individuals who imposed discriminatory and retaliatory terms and conditions on the Plaintiff, and was involved in the decisions to suspend and/or terminate Plaintiff's employment. At all times material hereto, he was acting under color of the authority of state law. He is a party in both his individual and official capacities.

17.     Defendant, Mary K. Casey, on information and belief, is an adult citizen and resident of the State of Wisconsin and was employed as the Manager, Human Resource Services at all times relevant in this case. As such, she was one of the individuals who imposed discriminatory and retaliatory terms and conditions on the Plaintiff, and was involved in the decisions to suspend and/or terminate Plaintiff's employment. At all times material hereto, she was acting under color of

the authority of state law.  She is a party in both her individual an official capacities.

18.     Defendant, Jana L. Champion, on information and belief, is an adult citizen and resident of the State of Wisconsin and was employed as the Crime Laboratory Manager-Milwaukee at all times relevant in this case.  As such, she was one of the individuals who imposed discriminatory and retaliatory terms and conditions on the Plaintiff, and was involved in the decisions to suspend and/or terminate Plaintiff's employment.  At all times material hereto, she was acting under color of the authority of state law. She is a party in both her individual and official capacities.

19.     Defendant, Eva M. Lewis, on information and belief, is an adult citizen and resident of the State of Wisconsin and was employed as the Forensics Scientist Supervisor-Milwaukee at all times relevant in this case.  As such, she was one of the individuals who imposed discriminatory and retaliatory terms and conditions on the Plaintiff, and was involved in the decisions to suspend and/or terminate Plaintiff's employment.  At all times material hereto, she was acting under color of the authority of state law.  She is a party in both her individual and official capacities.

## IV.  ADMINISTRATIVE PROCEEDINGS

20.     On or about June 28, 2012, Ms. Odogba filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that the Defendants State of Wisconsin Department of Justice and State of Wisconsin Crime Laboratory – Milwaukee, Division of Law Enforcement Services discriminated against her because of her race and in retaliation for raising complaints in the workplace in terms and conditions of employment and when it suspended her employment.

21.     On or about October 25, 2012, Ms. Odogba filed a charge of discrimination with the EEOC alleging that the Defendant State Crime Laboratory – Milwaukee, Division of Law Enforcement Services discriminated against her because of her race and in retaliation for raising complaints in the workplace and filing an EEOC charge, when it suspended her employment and terminated her employment.

22.     Ms. Odogba has exhausted her administrative remedies, obtained a "Right to Sue Letter" from the EEOC for both charges, copies of which are attached as Exhibit A and Exhibit B, and has met all conditions precedent to the initiation of this action.

## V.  COMMON FACTUAL ALLEGATIONS

23.     Plaintiff, Ms. Odogba, is a Black, African American female.

24.     Plaintiff was employed with the State of Wisconsin, Department of Justice, Division of Law Enforcement Services, State Crime Laboratory System for approximately 12 years.

25.     At the time her employment was terminated by the Defendants, Plaintiff was the first and only Black/African American Forensic Scientist/DNA Analyst – Senior for the State of Wisconsin, Department of Justice.

26.     At all times relevant, all matters regarding compensation, terms and conditions of employment, rights and privileges of Plaintiff's employment were governed and controlled by Defendants State of Wisconsin, Department of Justice and the State Crime Laboratory – Milwaukee, Division of Law Enforcement Services.

27.     Upon information and belief at all times relevant, Defendants J.B. Van Hollen, Kevin M. St. John, Bonnie L. Cyganek, Brian R. O'Keefe, David B. Zibolski, Kevin E. Jones, Mary

7

K. Casey, Jana L. Champion and Eva M. Lewis were acting as agents, servants and/or employees of Defendants State of Wisconsin, Department of Justice and the State Crime Laboratory – Milwaukee, Division of Law Enforcement Services.

28.     At all times relevant, Plaintiff fully, adequately, and completely performed all of the functions, duties and responsibilities of her employment with the Defendants State of Wisconsin, Department of Justice and State Crime Laboratory – Milwaukee, Division of Law Enforcement Services.

29.     In February 2010, Plaintiff was issued a pre-disciplinary letter by Defendant Jana L. Champion (White) because Plaintiff did not report to work on December 9, 2009, when state offices were closed by then-Governor Jim Doyle due to inclement weather.

30.     Upon information and belief, similarly situated white employees were not issued pre-disciplinary letters for not reporting to work on December 9, 2009, when state offices were closed by then Governor Jim Doyle due to inclement weather.

31.     Upon information and belief, Champion herself did not report to work on December 9, 2009, when state offices were closed by then-Governor Jim Doyle due to inclement weather.

32.     In 2010, Plaintiff was assigned the number 666 as a User ID in the Defendant, State Crime Laboratory's Qualtrax System.

33.     Defendant Cyganek denied Plaintiff's request to be assigned a different number.

34.     After being assigned the number 666, Plaintiff was followed around the workplace and called "Devil" by two white employees, Forensic Scientists, Reginald Templin and Anthony Spadafora.

35.     On May 31, 2011, Plaintiff talked to Defendant Eva. M. Lewis about the assignment

of DNA Analysts as it appeared that Analysts were assigned to teams based on the Anyalysts' races.

36.     On June 7, 2011, Plaintiff emailed Cindy L. O'Donnell (Former Administrator, Division of Management Services), Defendant Bonnie Cyganek (White), Defendant Brian O'Keefe (White), Defendant Kevin E. Jones (White), Defendant Jana L. Champion (White), Defendant Eva M. Lewis (Black), and Nicole L. Casper (White) about the assignment in the State Crime Laboratory in Milwaukee of DNA Analysts, which appeared to be made based on the Analysts' races.

37.     In August 2011, Plaintiff met with Defendants Champion, Jones, and O'Keefe.

38.     During this meeting in August 2011, Defendant O'Keefe issued Plaintiff a Letter of Direction that threatened Plaintiff's continued employment with the State and threatened Plaintiff with disciplinary actions for raising a concern about the assignment of DNA Analysts in the State Crime Laboratory in Milwaukee based on the Analysts' races.

39.     After Defendant O'Keefe gave Plaintiff  the Letter of Direction, he denigrated Plaintiff by stating to her and others in the meeting that he didn't know what type of relationship she had with Gary Hamblin (the former Division Administrator).

40.     Defendant O'Keefe also stated words to the effect to Plaintiff, in the presence of others in the meeting, that by the time he is done with anyone that has filed a complaint, they drop the complaint.

41.     Defendant O'Keefe also stated words to the effect to Plaintiff, in the presence of others in the meeting, that she was "playing the race card."

42.     In August 2011, Plaintiff filed a formal complaint with Defendant Cyganek (at that time Human Resources Manager) and copied Cindy O'Donnell, Former Administrator, Division of

Management Services, against Defendant O'Keefe regarding his Letter of Direction that threatened Plaintiff's continued employment with the State and threatened her with disciplinary actions for raising a concern about the assignment of DNA Analysts in the State Crime Laboratory in Milwaukee based on the Analysts' races. Plaintiff's August 2011 complaint also addressed Defendant O'Keefe's treatment of Plaintiff during the August 2011 meeting.

43. In September 2011, Plaintiff met with Cindy O'Donnell regarding Plaintiff's complaint against O'Keefe.

44. Upon information and belief, after meeting with Plaintiff, Cindy O'Donnell reported back to the Attorney General's Office.

45. Upon information and belief, Defendant St. John (White) met with Defendant O'Keefe, who agreed to withdraw the Letter of Direction issued to Plaintiff.

46. On March 23, 2012, Plaintiff filed a complaint with Champion, against her direct supervisor Lewis, regarding Lewis's behavior towards Plaintiff.

47. On April 26, 2012, Plaintiff was served an Investigatory Letter from Defendant David L. Zibolski (White), to attend an investigatory meeting on April 27, 2012, at 9AM, regarding allegations that Plaintiff violated a work rule and to answer questions regarding her March 23, 2012, complaint against supervisor Lewis. Plaintiff was not told the specifics regarding the work rule she was accused of violating prior to the meeting.

48. On April 27, 2012, Plaintiff met with Defendants Zibolski and Jones.

49. During the April 27, 2012, investigatory meeting, Plaintiff discussed with Defendants Zibolski and Jones the March 23, 2012, complaint she had raised about her supervisor, Defendant Lewis.

50.     During the April 27, 2012, investigatory meeting, the parties only discussed the complaint that Plaintiff had raised against Defendant Lewis.

51.     During the investigatory meeting on April 27, 2012, Defendant Zibolski agreed with Plaintiff that Lewis's behavior was a problem.

52.     During the investigatory meeting on April 27, 2012, Defendant Zibolski told Plaintiff that they would discuss the work rule Defendants claimed she violated.

53.     The parties never discussed any work rules Defendants claimed Plaintiff violated during the April 27, 2012 meeting.

54.     During the meeting on April 27, 2012, Defendant Zibolski never stated that Plantiff's behavior during the meeting violated any of Defendants' work rules.

55.     During the investigatory meeting on April 27, 2012, Plaintiff stated to Defendant Zibolski that she felt that he was harassing her and retaliating against her because of the complaint she had filed against her supervisor, Lewis.

56.     After Plaintiff participated in the investigatory meeting on April 27, 2012, Plaintiff filed a formal complaint on April 27, 2012, with Defendant Cyganek (then-Human Resources Manager) against Defendant Zibolski for his actions towards her during the April 27, 2012, investigatory meeting.

57.     Upon information and belief, similarly situated white employees have not been ordered into meetings under the pretense that work rule violations were going to be discussed, but then were not discussed during the meeting.

58.     Upon information and belief, similarly situated employees who have not raised concerns about race discrimination in the workplace have not been ordered into meetings under the

11

pretense that work rule violations were going to be discussed, but then were not discussed during the meeting.

59.     On May 1, 2012, Plaintiff was served a Pre-disciplinary Hearing Letter from Defendant Zibolski.

60.     After receiving the Pre-disciplinary Hearing Letter, Plaintiff requested personal leave from Kathy Mahnke (White), Justice Supervisor, so that she could obtain Legal Counsel and/or a Representative and prepare for the meeting.

61.     Mahnke informed Plaintiff that Defendant Champion had e-mailed all of the supervisors, stating that they were not to allow Plaintiff time off of work for any reason and to report immediately to Defendant Zibolski if Plaintiff was a problem.

62.     Upon information and belief, such instructions have not been given to supervisors to limit requests for time off of work for white employees.

63.     Upon information and belief, such instructions have not been given to supervisors to limit requests for time off of work for employees who have not made discrimination complaints against the Defendants.

64.     On May 8, 2012, Plaintiff received a letter from Defendant Zibolski that she was being suspended for 1 day.

65.     Plaintiff received the 1-day suspension without pay after filing a complaint against Defendants Lewis and Zibolski and after raising concerns regarding the assignment of DNA Analysts in the State Crime Laboratory in Milwaukee based on the Analysts' races.

66.     Defendant Zibolski referenced Plaintiff's concern regarding the assignment of DNA Analysts in his May 8, 2012, suspension letter to Plaintiff. Defendant Zibolski used this, in part, as

a factor to suspend Plaintiff for 1-day.

67. Defendant Zibolski was not employed with the Defendant State of Wisconsin, Department of Justice when Plaintiff complained about the assignment of DNA Analysts in the State Crime Laboratory in Milwaukee in May 2011.

68. Defendant Zibolski was not included on the email correspondence Plaintiff sent to Defendants on June 7, 2011, regarding the assignment of DNA Analysts in the State Crime Laboratory in Milwaukee based on the Analysts' race.

69. Plaintiff does and always has disputed the claim that her conduct in the April 27, 2012 meeting violated any of Defendants' work rules.

70. Upon information and belief, similarly situated white employees have not received a 1-day suspension after filing a complaint about discrimination in the workplace.

71. On May 17, 2012, Plaintiff met with Defendant Cyganek regarding the complaint she filed against Zibolski on April 27, 2012.

72. During the meeting on May 17, 2012, Plaintiff informed Defendant Cyganek that she would be filing a complaint with the EEOC because of the discrimination and retaliation she has faced in the workplace.

73. On May 30, 2012, Plaintiff sent Defendants Cyganek, St. John, and Van Hollen additional information pertaining to her discrimination complaint against Defendant Zibolski.

74. On June 6, 2012, around 9:38 AM, Plaintiff filed a grievance with Defendant Champion opposing the 1-day suspension.

75. Defendant Champion informed Plaintiff that she sent the grievance to Defendant Jones on June 6, 2012.

13

76.     On June 6, 2012, around 11:55 AM, Plaintiff was issued a Letter of Direction from Defendant Jones because she had filed complaints opposing discrimination, provided audio evidence to Defendants Van Hollen, St. John, and Cyganek that showed that Defendant Zibolski falsified information from the April 27, 2012 investigatory meeting with Plaintiff, at which Defendant Jones was present, and for filing a grievance opposing the 1-day suspension Plaintiff received in May 2012.

77.     Upon information and belief, Defendant Cyganek informed Defendants Zibolski and Jones of the audio information that the Plaintiff provided to her on May 30, 2012.

78.     On June 6, 2012, Defendant Jones threaten to discpline Plaintiff for copying Defendants Van Hollen and St. John on complaints opposing discrimination and for providing audio evidence to Defendant Van Hollen. Defendant Jones ordered the Plaintiff to cease and desist immediately from sending such communications.

79.     Upon information and belief, white employees have not been instructed to not copy Defendant Van Hollen and others in his office on communications regarding discrimination in the workplace.

80.     On June 8, 2012, Plaintiff asked Defendant Jones to stop harassing her and discriminating against her based on her race and to stop retaliating against her for filing a grievance and complaints opposing discrimination in the workplace.

81.     On June 11, 2012, Defendant Zibolski issued Plaintiff a notice, accusing Plaintiff of violating Defendants' work rules.

82.     On June 11, 2012, Plaintiff asked Defendant Zibolski to stop harassing her and discriminating against her based on her race and to stop retaliating against her filing a grievance

and complaints regarding discrimination in the workplace.

83.     Upon information and belief, on June 13, 2012, Defendant Cyganek sent correspondence targeting Plaintiff to Defendant Zibolski.

84.     On June 14, 2012, Plaintiff met with her supervisor, Defendant Lewis, who informed Plaintiff that changes were made to her performance evaluation (covering the period May 19, 2011 to May 15, 2012) that had been previously completed and reviewed with Plaintiff on May 16, 2012.

85.     Plaintiff's Revised Performance Evaluation mentioned the Letter of Direction that Plaintiff received on June 6, 2012, and also changed her overall rating from "meets expectation" to "needs improvement."

86.     Defendant Lewis stated to Plaintiff that she did not make the changes to Plaintiff's performance evaluation, but that the changes came from Defendant O'Keefe's office.

87.     For the performance evaluation period May 19, 2011 to May 15, 2012, the Departmental performance requirement for DNA Analysts was to aim for an average case output of 10 cases per month and an average case turn-around of 60 days.

88.     For the performance evaluation period May 19, 2011 to May 15, 2012, Plaintiff had an average case output of 12 cases per month and an average case turn-around of 53 days.

89.     Plaintiff's performance in case output and case turn-around exceeded the Defendants' expectations for DNA Analysts.

90.     Defendant Lewis gave Plaintiff  "meets expectation" for Examination of Physical Evidence with Technical Review, which made up 90% of the total of the Plaintiff's Goals and Worker Activities of the Position Decription/Summary.  The percentage time is the proportion of

15

the employee's total work time spent on a goal or worker activity annually.

91.     Plaintiff met or exceeded all applicable performance areas for her Position Description/Summary for the period May 19, 2011 to May 15, 2012.

92.     Yet, Defendants gave Plaintiff an overall negative performance evaluation with a ranking of "needs improvement."

93.     Upon information and belief, Defendants subjected Plaintiff's performance to scrutiny for filing complaints opposing discrimination in the workplace.

94.     For the period 2000 to 2011, Plaintiff received satisfactory performance evaluations, with rankings of at least "meets expectation."

95.     On March 8, 2012, Plaintiff received a Discretionary Merit Compensation (DMC) from Defendant Van Hollen.

96.     Defendants' Employees who have been disciplined or whose job performance has been rated below satsifactory in the previous fiscal year or 12 months, whichever is greater, are not eligible for DMC.

97.     Upon information and belief, similarly situated white employees have not received a negative Performance Evaluation with a rating of "needs improvement" when they have met the requirements of their Position Description/Summary and/or for events occurring outside the time period covering the applicable review period.

98.     Upon information and belief, similarly situated employees who have not raised concerns about race discrimination in the workplace have not received a  negative Performance Evaluation with a rating of "needs improvement" when they have met the requirements of their Position Description/Summary  and/or for events occurring outside the time period covering the

applicable review period.

99.     On or about June 20, 2012, Plaintiff met with Defendant Casey and Tina Virgil (African American, Administrative Director - Division of Criminal Investigation), to discuss concerns Plaintiff had about discrimination, harassment, and retaliation in the workplace.

100.     During the June 20, 2012, meeting, Plaintiff informed Defendant Casey and Virgil that Defendant Zibolski was subjecting her to investigatory meetings and pre-disciplinary hearings with false violations of work rules to create a false impression that she had disciplinary issues, in order to generate a paper trail and have her removed from her position.

101.     During the June 20, 2012, meeting, Virgil stated that there is a lot of "red tape" to go through when removing an individual from their employment position.

102.     During the June 20, 2012, meeting, Plaintiff informed Virgil and Defendant Casey that the Defendents changed the Plaintiff's Performance Evaluation from "meets expectation" to "needs improvement".  Virgil stated to Plaintiff that she heard that Plaintiff was a great Analyst.

103.     During the June 20, 2012, meeting, Plaintiff informed Virgil and Defendant Casey that she was afraid of being punished for participating in the meeting and for her complaints against Defendants Zibolski and Jones, in which Plaintiff opposed race discrimination and retaliation.

104.     On or about June 28, 2012, Plaintiff filed a discrimination complaint with the EEOC against the Defendant alleging race discrimination and retaliation.

105.     Plaintiff was an employee with permanent status in class during 2012.

106.     On July 6, 2012,  Defendant Zibolski suspended Plaintiff for a total of 33 days, without pay, which was to start on July 25, 2012.

107.  Wisconsin Statutes do not allow for suspensions of more than 30 days for a State employee with permanent status in class.

108.  In the documentation regarding the 33-day suspension, Defendants made false allegations that the Plaintiff's conduct violated work rules.

109.  The 33-day suspension was based on Plantiff's participation in the April 27, 2012, investigatory meeting and her June 8, 2012, correspondence opposing race discrimination and retaliation.

110.  Plaintiff does and always has disputed the claims that she violated Defendants' work rules for which she received the 33-day suspension.

111.  Upon information and belief, similarly situated white employees have not received a 33-day suspension for violating the work rules that Defendants claim Plaintiff violated.

112.  Upon information and belief, similarly situated employees who have not raised concerns about race discrimination in the workplace have not received a 33-day suspension for violations of work rules Defendants claim Plaintiff violated.

113.  On July 12, 2012, Plaintiff filed a grievance opposing the 33-day suspension.

114.  On July 20, 2012, Defendants terminated Plaintiff's employment with the State of Wisconsin.

115.  Defendants provided false information in Plaintiff's termination letter of July 20, 2012.

116.  Upon information and belief, prior to the Defendants terminating Plaintiff's employment, Defendant Cyganek sent correspondance to Defendant Zibolski on June 13, 2012, targeting Plaintiff.

117. Among other things, in the termination letter, Defendant Cyganek alleged Plaintiff needed to have a Medical Certificate for her absence on June 15, 2012. This is contrary to State and Federal policies.

118. Based on information and belief, similarly situated white employees were informed by Casper, DNA Forensic Supervisor, on July 10, 2012, that they needed to provide a medical excuse if absent from work three or more consecutive days.

119. Plaintiff provided Defendant Cyganek medical documentation supporting her absence on June 15, 2012.

120. Defendant Cyganek disregarded Plaintiff's medical documentation for Plaintiff's absence on June 15, 2012. Defendant Cyganek disciplined Plaintiff for taking sick leave on June 15, 2012.

121. Plaintiff has always denied the allegations made against her that the Defendants' claim are the bases for their decision to terminate Plaintiff's employment.

122. Upon information and belief, similarly situated white employees have not had their employment terminated by Defendants for violations of the work rules the Defendants claim that Plaintiff violated.

123. Upon information and belief, similarly situated employees who have not made internal complaints about discrimination have not had their employment terminated by Defendants for violations of the work rules that Defendants claim that Plaintiff violated.

124. Upon information and belief, similarly situated employees who have not filed discrimination complaints with the EEOC have not had their employment terminated by Defendants for violations of the work rules that Defendants claim that Plaintiff violated.

## VI.  FIRST CAUSE OF ACTION: RACE DISCRIMINATION VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 and THE CIVIL RIGHTS ACT OF 1991

125.     Plaintiff restates the information stated in numbers 1-124, above.

126.     Defendants engaged in unlawful employment practices by suspending, discharging and otherwise intentionally discriminating against Plaintiff with respect to terms, conditions, and privileges of employment, because of Plaintiff's race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, and the Civil Rights Act of 1991, 42 U.S.C.§1981, et seq. ("CRA of 1991"), and in reckless indifference to her federally protected rights.

127.     The Defendants' actions interfered with Plaintiff's work performance and created an intimidating, hostile and offensive work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, and the Civil Rights Act of 1991, 42 U.S.C.§1981, et seq. ("CRA of 1991"), and in reckless indifference to her federally protected rights.

128.     As a direct and proximate cause of Defendants' actions to discriminate against Plaintiff and create an intimidating, hostile and offensive work environment, Defendants have caused Plaintiff to suffer compensatory damages, including, but not limited to, loss of wages, loss of employment benefits, mental anguish, pain and suffering, humiliation, embarrassment, degradation, loss of reputation, attorney fees and other expenses as allowed by law.

129.     Defendants' conduct was willful, in that they knew and/or showed reckless disregard for the matter of whether its conduct, described above, was prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, and the Civil Rights Act of 1991, 42 U.S.C. §1981 et seq.

Case 2:13-cv-00573-RTR   Filed 05/23/13   Page 20 of 26   Document 1

130.     The Defendants' reckless indifference in intentionally discriminating against Plaintiff and intentionally failing to remedy or prevent equal employment opportunities for Plaintiff entitles her to punitive damages.


## VII.  SECOND CAUSE OF ACTION: RETALIATION
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 and THE CIVIL RIGHTS ACT OF 1991

131.     Plaintiff restates the information stated in numbers 1-124, above.

132.     Defendants engaged in unlawful employment practices by suspending, discharging and otherwise intentionally discriminating against Plaintiff with respect to terms, conditions, and privileges of employment, because Plaintiff's raised concerns about discrimination in the workplace and because she filed discrimination and retaliation complaints against Defendants, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, and the Civil Rights Act of 1991, 42 U.S.C.§1981, et seq. ("CRA of 1991"), and in reckless indifference to her federally protected rights.

133.     The Defendants' actions interfered with Plaintiff's work performance and created an intimidating, hostile and offensive work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, and the Civil Rights Act of 1991, 42 U.S.C.§1981, et seq. ("CRA of 1991"), and in reckless indifference to her federally protected rights.

134.     As a direct and proximate cause of Defendants' actions to retaliate against Plaintiff and create an intimidating, hostile and offensive work environment, Defendants have caused Plaintiff to suffer compensatory damages, including, but not limited to, loss of wages, loss of employment benefits, mental anguish, pain and suffering, humiliation, embarrassment, degradation,

Case 2:13-cv-00573-RTR   Filed 05/23/13   Page 21 of 26   Document 1

loss of reputation, attorney fees and other expenses as allowed by law.

135. Defendants' conduct was willful, in that they knew and/or showed reckless disregard for the matter of whether its conduct, described above, was prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, and the Civil Rights Act of 1991, 42 U.S.C. §1981 et seq.

136. The Defendants' reckless indifference in intentionally discriminating against Plaintiff and intentionally failing to remedy or prevent equal employment opportunities for Plaintiff entitles her to punitive damages.

## VIII. THIRD CAUSE OF ACTION: VIOLATION OF 42 U.S.C. §1983

137. Plaintiff restates the information stated in numbers 1-124, above.

138. The Defendants' actions were under color of the authority of the State of Wisconsin, when they deprived Plaintiff of her rights, privileges and immunities under the Equal Protection Clause as secured by the U.S. Constitution by engaging in unlawful employment practices by suspending, discharging, and otherwise intentionally discriminating against Plaintiff with respect to terms, conditions, and privileges of employment because of Plaintiff's race, in violation of 42 U.S.C. §1983.

139. Defendants' actions were the direct and proximate result of the Plaintiff's damages.

140. Defendants' actions have caused Plaintiff to suffer compensatory damages, including but not limited to, loss of back wages, loss of employment benefits, mental anguish, emotional pain, loss of reputation, attorneys' fees and other expenses as allowed by law.

141.    As a direct and proximate result of Defendants' malicious and reckless actions in depriving Plaintiff of her equal protection rights as provided by the U.S. Constitution in violation of 42 U.S.C. § 1983, Plaintiff is entitled to punitive damages.

142.    Regarding the individually named Defendants, they had a legal duty to act to prevent the misdeeds Plaintiff faced, and their failure to act amounted to gross negligence or deliberate indifference of Plaintiff's rights.


## X.  FOURTH CAUSE OF ACTION:  VIOLATION OF 42 U.S.C. §1985

143.    Plaintiff restates the information stated in numbers 1-124, above.

144.    Defendants conspired together to deprive Plaintiff of the equal protection of the laws when they imposed terms and conditions of employment on Plaintiff that it did not impose on white employees and employees who did not raise and/or file discrimination complaints against the Defendants, suspended Plaintiff's employment and terminated Plaintiff's employment with the State of Wisconsin.

145.    As a result of Defendants' actions, Plaintiff suffered damages.

146.    Defendants shall be liable to Plaintiff for all damages caused by their wrongful acts.


## XI.  FIFTH CAUSE OF ACTION:  VIOLATION OF 42 U.S.C. §1986

147.    Plaintiff restates the information stated in numbers 1-124, above.

148.    Defendants had knowledge of the wrongs conspired to be done, had power to prevent or aid in preventing the commission of the wrongs, but neglected or refused to do so.

23

149.     As a result of Defendants' actions, Plaintiff suffered damages.

150.     Defendants shall be liable to Plaintiff for all damages caused by their wrongful acts.

## XII. DAMAGES

WHEREFORE, Plaintiff respectfully prays for the following relief:

a.     a declaratory judgment that Defendants' actions, policies, and procedures violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq., and the Civil Rights Act of 1991, et. seq., 42 U.S.C. §1981;

b.     a declaratory judgment that Defendants' actions, while acting under color of law, have caused Plaintiff to suffer from equal employment opportunities because of her race, in violation of the Fourteenth Amendment of the U.S. Constitutation in violation of 42 U.S.C. §1983;

c.     a declaratory judgment that Defendants' actions, while acting under color of law, have subjected Plaintiff to arbitrary and capricious treatment in violation of her equal protection rights as entitled under the Fourteenth Amendment of the U.S. Constitution and the laws of the United States of America in violation of 42 U.S.C. §1983;

d.     a declaratory judgment that Defendants' actions, while acting under color of law, violated 42 U.S.C. §1985;

e.     a declaratory judgment that Defendants' actions, while acting under color of law, violated 42 U.S.C. §1986

f.     a permanent injunction against Defendants and their officers and employees from engaging in any employment policy or practice that discriminates against any employee or applicant

for employment on the basis of race;

g.      a permanent injunction against Defendants and their officers and employees from engaging in any employment policy or practice that retaliates against any employee or applicant for employment because they file complaints with the EEOC;

h.      a permanent injunction against Defendants and their officers and employees from allowing an intimidating, hostile and offensive work environment to exist;

i.      an injunctive relief to Defendants to make Plaintiff whole by providing for reinstatement to her previous employment position, any appropriate promotions to restore her not only to where she was, but where she would be today, absent discrimination, including purging her employment file of all discipline and criticism;

j.      an award of compensatory damages, including wages, back pay, and/or other benefits of employment, as well as damages for mental anguish, pain and suffering, humiliation, embarrassment, degradation, loss of reputation and other non-pecuniary losses,  in an amount to be determined, for the Plaintiff, against the Defendants jointly and severally;

k.      an award of punitive damages against the Defendants in an amount to be determined, jointly and severally, on the grounds that the Defendants' conduct complained of herein was done knowingly, willfully and in bad faith, was done with malice or with reckless indifference, in violation of Plaintiff's right to be free from discrimination based on her race, and such conduct interfered with Plaintiff's work performance and created an intimidating, hostile and offensive work environment;

l.      to grant the Plaintiff her costs, disbursements and attorney fees in bringing this action as provided for by 42 U.S.C. §2000e-5(k) and by all other applicable statutes and provisions;

25

and

       m.       for such further relief as the Court deems proper and just.

Dated this 23rd day of May 2013.

                                 Jeffrey S. Hynes & Associates, S.C.

                               By:  s/<u>Stephanie M. Brown</u>
                                     Stephanie M. Brown
                                     Attorney for Plaintiff
                                     State Bar No.: 1041431

<u>P.O. Address</u>
2300 N. Mayfair Road, Suite 390
Wauwatosa, WI 53226
414-774-2920
414-774-2923 (fax)
sbrown@hyneslawfirm.com

26