# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**SUSIE J. ODOGBA,**

    Plaintiff,

    v.            **Case No. 13-C-573**

**WISCONSIN DEPARTMENT OF JUSTICE;**
**STATE CRIME LABORATORY–MILWAUKEE;**

and

**J. B. VAN HOLLEN,**
**KEVIN M. ST. JOHN,**
**BONNIE L. CYGANEK,**
**BRIAN R. O'KEEFE,**
**DAVID B. ZIBOLSKI,**
**KEVIN E. JONES,**
**MARY K. CASEY,**
**JANA L. CHAMPION, and**
**EVA M. LEWIS,**
*Individually and in their Official Capacities.*

    Defendants.

---

# DECISION AND ORDER

---

   For about a dozen years, Plaintiff Susie J. Odogba ("Odogba"), a black/ African-American[1] female, worked as an analyst at the Defendant State Crime Laboratory-Milwaukee ("Lab"). The events that led to this action took place beginning in 2009 and ending with the July 20, 2012, termination of her employment.

---

[1] Odogba refers to herself using both terms (Compl. ¶ 23.) (ECF No. 1.)

On May 23, 2013, Odogba commenced this action against the Wisconsin Department of Justice (the "DOJ"), the Lab, and nine individuals in their official and individual capacities (collectively the "Individual Defendants"), alleging that they engaged in unlawful employment practices by suspending, discharging and otherwise intentionally discriminating against her with respect to terms, conditions, and privileges of employment because of her race, and that their actions interfered with her work performance and created an intimidating, hostile and offensive work environment.

Odogba's Complaint sets forth five causes of action: race discrimination and retaliation claims against the Defendants in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et. seq.* ("Title VII") and the Civil Rights Act of 1991, 42 U.S.C. §1981, *et seq.*[2] (first and second causes of action); 28 U.S.C. §1983, *et seq.* (third cause of action); 42 U.S.C. §1985, *et seq.* (fourth cause of action); and 42 U.S.C. §1986, *et seq.* (fifth cause of action). Odogba requests declaratory judgment; injunctive relief including reinstatement to her prior position, with promotions and the purging of adverse information from her employment file; compensatory and punitive damages against the Defendants jointly and severally; and costs and attorney fees.

This Court has subject matter jurisdiction over Odogba's claims pursuant to 28 U.S.C. § 1331. Venue is proper in this District pursuant to 28 U.S.C. §1391(b).

This matter is before the Court on the Defendants' multi-faceted motion to dismiss with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for

---

[2] In response to the Defendants' inquiry in footnote one of their memorandum in support of their motion to dismiss, Odogba indicates that she intends to state a separate cause of action under 42 U.S.C. § 1981. (See Pl.'s Resp. Defs.' Mem., 1 n.1.) (ECF No. 9.)

failure to state a claim.  The motion is fully briefed and is addressed herein.

## Standard of Review

For a complaint to withstand a Rule 12(b)(6) motion, Federal Rule of Civil Procedure 8(a)(2) requires that a claimant provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading must include more than mere legal conclusions or a recitation of the cause of action elements, but does not require detailed factual allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The pleading must meet a plausibility threshold; mere possibility is not enough. *Id.* at 570.  Plausibility means there are enough facts in the complaint for a reviewing court to draw a reasonable inference that the pleader is entitled to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, the Court need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).

Even after *Twombly,* courts must still approach motions under Rule 12(b)(6) by "constru[ing] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor."  *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008).  This threshold requires a court to utilize its judicial experience and common sense within the context of the facts to determine whether the pleading meets the plausibility standard.  *Iqbal*, 556 U.S. at 679.

The Seventh Circuit has reaffirmed that there is a "minimal pleading standard" for race and sex discrimination.  *Tamayo*, 526 F.3d at 1084.  Although such a complaint must contain more than "a general recitation of the elements of the claim," it need not be

detailed or contain evidence. *Id.* A complaint must allege "'some specific facts' to support the legal claims asserted." *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011) (citation omitted). "The degree of specificity required . . . rises with the complexity of the claim." *Id.* at 616-17; *see also Swanson v. Citibank, N.A.,* 614 F.3d 400, 405 (7th Cir. 2010) ("A more complex case . . . will require more detail. . . ."). "[A] complaint alleging [race] discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [race]." *Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014, 1028 (7th Cir. 2013) (quoting *Tamayo,* 526 F.3d at 1084).

Furthermore, the fact that allegations begin with the statement "on information and belief" will not automatically render them insufficient. Factual allegations made in a complaint must not be pled with absolute certainty so long as they are sufficient to make a claim plausible. *See Intravisual Inc. v. Fujitsu Microelectronics Am. Inc.,* 2:10-CV-90-TJW, 2011 WL 1004873, at *5 (E.D. Tex. Mar. 18, 2011) ("Rule 11 plainly contemplates that pleadings based on information and belief are acceptable.").[3]

### Facts

For the approximately twelve years Odogba was employed at the Lab as a Forensic Scientist/DNA Analyst—Senior, through the July 20, 2012, date that her employment was terminated, she was the first and only African-American in that position. For the period 2000 to 2011, Odogba received satisfactory performance evaluations, with

---

[3] The Court recognizes that the Texas district court decision is not precedential. However, it addresses a question implicitly raised by the many non-jurisdictional allegations made on "information and belief."

rankings of at least "meets expectation." (Compl. ¶ 94.)

Odogba did not report to work on December 9, 2009, because then-Governor James Doyle closed state offices due to inclement weather. On information and belief, Defendant Jana L. Champion ("Champion"), the Lab manager, who is white, also did not report to work that day. In February 2010, Champion issued a pre-disciplinary letter to Odogba because she had not reported for work on December 9, 2009. On information and belief, similarly situated white employees were not issued pre-disciplinary letters for not reporting to work on December 9, 2009, when state offices were closed.

In 2010 Odogba was assigned 666[4] as a user identification number for the Lab's Qualtrax system. Based on this number assignment, two white co-workers, forensic scientists Reginald Templin and Anthony Spadafora, followed Odogba around the workplace and called her "Devil." Odogba requested a different number, but her request was denied by Defendant Bonnie Cyganek ("Cyganek"), who is white and was the Human Resources Manager and Administrator for the Division of Management Services.

On May 31, 2011, Odogba spoke to Defendant Eva M. Lewis ("Lewis"), who is African-American, about the assignment of DNA analysts because it appeared that teams were assigned based on race. Odogba further conveyed her concern about race-based team assignments via a June 7, 2011, email to Defendants Cindy L. O'Donnell

---

[4]The number 666 is the number associated with the mark of the beast, also known as the Antichrist, a term in the Book of Revelations of the New Testament. *See* http://christianity.about.com/od/endtimestopicalstudy/a/Mark-Of-The-Beast.htm (last visited April 30, 2014)

("O'Donnell"),[5] the Administrator for the Division of Management Services; Cyganek; Brian R. O'Keefe ("O'Keefe"), the Administrator for Law Enforcement Services ("LES"), who is white; Kevin E. Jones ("Jones"), the Lab director, who is white; Champion; and Lewis; and Nicole L. Casper ("Casper"), who is white.

In August 2011, Odogba met with Champion, Jones, and O'Keefe. At the meeting, O'Keefe issued a letter of direction to Odogba that threatened her with disciplinary action for raising concerns about the race-based assignments of DNA analysts and threatened her continued employment with the State. After giving Odogba the letter, O'Keefe "denigrated" her by stating that he didn't know what type of relationship she had with the former Division Administrator, Gary Hamblin (Compl. ¶ 39.) Addressing Odogba, O'Keefe also made statements to the effect that by the time he was done with anyone who filed a complaint, the complaint was dropped; and that she was "playing the race card." (*Id*. at ¶ 41.) Odogba filed a formal complaint against O'Keefe regarding the letter of direction and his treatment of her during the meeting. She filed the complaint with Cyganek and copied O'Donnell.

Odogba met with O'Donnell during September 2011 regarding the complaint against O'Keefe. Upon information and belief, O'Donnell reported to the Wisconsin Attorney General's office after the meeting. Defendant Kevin St. John ("St. John"), Wisconsin Deputy Attorney General, who is white, met with O'Keefe, who agreed to

---

[5] The Complaint does not allege O'Donnell's race.

withdraw the letter of direction.[6]

On March 8, 2012, Odogba received Discretionary Merit Compensation ("DMC") from Wisconsin Attorney General, Defendant J. B. Van Hollen ("Van Hollen"), who is white. Employees who have been disciplined or whose job performance has been rated below satisfactory in the previous fiscal year or 12 months, whichever is greater, are not eligible for DMC.

On March 23, 2012, Odogba filed a complaint against Lewis, her immediate supervisor, with Champion. The subject of the complaint was Lewis's behavior towards Odogba.

On April 26, 2012, Odogba was served with an investigatory letter from Defendant David L. Zibolski ("Zibolski"), the Deputy Administrator of LES, who is white, directing her to attend an investigatory meeting on April 27, 2012, regarding allegations that Odogba had violated a work rule, and to answer questions regarding the March 23, 2012, complaint against Lewis. Prior to the meeting, Odogba was not told the specifics regarding the work rule she was accused of violating.

On April 27, 2012, Odogba met with Zibolski and Jones and discussed her complaint against Lewis with them. Zibolski agreed that Lewis's behavior was a problem. During the meeting, Zibolski said that they would discuss Odogba's alleged violation of a work rule, but it was not addressed. Zibolski never stated that Odogba's behavior at the meeting violated any work rules. The only thing discussed during the meeting was the

---

[6] The Complaint does not allege the date of the meeting or the date that O'Keefe withdrew the letter of direction.

complaint Odogba had raised against Lewis. Odogba told Zibolski that she felt he was harassing her and retaliating against her because she had filed the complaint against Lewis. After the meeting, Odogba filed a formal complaint with Cyganek against Zibolski for his actions towards her during the meeting. On information and belief, similarly situated white employees have not been ordered into meetings under the pretense of discussing work rule violations which were then were not addressed during the meeting.

On May 1, 2012, Odogba was served with a pre-disciplinary hearing letter from Zibolski. After receiving the letter, Odogba requested personal leave from Kathy Mahnke ("Mahnke"), a Justice Supervisor, who is white, in order to obtain legal counsel and/or a representative and to prepare for the disciplinary hearing. Mahnke informed Odogba that Champion had e-mailed all supervisors stating they were not to allow Odogba time off for any reason, and that if Odogba was a problem they should report immediately to Zibolski. Upon information and belief, instructions to deny time off have not been given to supervisors with respect to white employees or employees who have not made discrimination complaints against the Defendants.

On May 8, 2012, Odogba received a letter from Zibolski indicating that she was being suspended for one day. In the letter, Zibolski mentioned Odogba's concern regarding the assignment of DNA analysts, and used this, in part, as a factor for the one-day suspension. However, Zibloski was not a DOJ employee in May 2011 when Odogba complained about the assignment of DNA analysts in the Lab, and he was not included on the June 7, 2011, email Odogba sent regarding the subject.

Odogba has consistently disputed the claim that her conduct in the April 27, 2012, meeting violated any work rules. Upon information and belief, similarly situated white employees have not received a one-day suspension after filing a complaint about workplace discrimination.

On May 16, 2012, Odogba's performance evaluation for May 19, 2011 to May 15, 2012, was reviewed with her. The performance requirement for DNA analysts was to aim for an average case output of ten cases per month and an average case turn-around of 60 days. Odogba had an average case output of 12 cases per month and an average case turn-around of 53 days, which exceeded the Defendants' expectations for DNA analysts. Lewis gave Odogba a "meets expectation" rating for examination of physical evidence with technical review, which made up 90% of the total of Odogba's goals and worker activities of the position description/summary. Percentage time is the proportion of the employee's total work time spent on a goal or worker activity annually. Odogba met or exceeded all applicable performance areas for her position description/summary for the period May 19, 2011 to May 15, 2012.

On May 17, 2012, Odogba met with Cyganek regarding the April 27, 2012, complaint she had filed against Zibolski. Odogba informed Cyganek that she would be filing a complaint with the United States Equal Employment Opportunity Commission ("EEOC") because of workplace discrimination and retaliation against her.

On May 30, 2012, Odogba sent Cyganek, St. John, and Van Hollen additional information, including audio materials, pertaining to her discrimination complaint against Zibolski. Upon information and belief, Cyganek informed Zibolski and Jones of the audio

- 9 -

information that Odogba provided to her.

On June 6, 2012, at about 9:38 a.m. Odogba filed a grievance with Champion opposing her one-day suspension. Champion told Odogba that she forwarded the grievance to Jones the same day. About 11:55 a.m., Jones issued a letter of direction to Odogba because she had filed complaints opposing discrimination; had provided audio evidence to Van Hollen, St. John, and Cyganek showing that Zibolski falsified information from the April 27, 2012, investigatory meeting with Odogba, at which Jones was present; and had filed a grievance opposing the May 2012 one-day suspension. Jones threatened to discipline Odogba for copying Van Hollen and St. John on complaints opposing discrimination and for providing audio evidence to Van Hollen. Jones ordered Odogba to immediately cease from sending such communications. Upon information and belief, white employees have not been instructed not to copy Van Hollen and others in his office on communications regarding discrimination in the workplace.

On June 8, 2012, Odogba asked Jones to stop harassing her and discriminating against her based on her race, and to stop retaliating against her for filing a grievance and complaints opposing workplace discrimination.

On June 11, 2012, Zibolski issued Odogba a notice accusing her of violating work rules. Odogba asked Zibolski to stop harassing her and discriminating against her based on her race, and to stop retaliating against her for filing a grievance and complaints regarding workplace discrimination.

On information and belief, on June 13, 2012, Cyganek sent correspondence to Zibolski that targeted Odogba.

On June 14, 2012, Odogba's supervisor, Lewis, informed her that changes had been made to her performance evaluation for the period May 19, 2011 to May 15, 2012. The revised performance evaluation mentioned the letter of direction that Odogba received on June 6, 2012, and changed her overall rating from "meets expectation" to "needs improvement." Lewis told Odogba that the changes in the performance evaluation came from O'Keefe's office. Upon information and belief, the Defendants subjected Odogba's performance to scrutiny for filing complaints opposing workplace discrimination; and similarly situated employees who have not raised concerns about race discrimination in the workplace have not received a negative performance evaluation with a rating of "needs improvement" when they have met the requirements of their position description/summary and/or for events occurring outside the time period covering the applicable review period.

On June 15, 2012, Odogba was absent from work. Odogba provided Cyganek medical documentation supporting that absence.

On or about June 20, 2012, Odogba met with Defendant Mary Casey ("Casey"), the Manager of Human Resources Services, who is white, and Tina Virgil ("Virgil"), the Administrative Director of the Division of Criminal Investigation, who is African-American, to discuss Odogba's concerns about workplace discrimination, harassment, and retaliation. Virgil told Odogba that she had heard Odogba was a great analyst. During the meeting, Odogba informed Casey and Virgil that Zibolski was subjecting her to investigatory meetings and pre-disciplinary hearings and citing false violations of work rules to create a false impression that she had disciplinary issues in order to generate a

paper trail and have her removed from her position. Virgil stated that there was a lot of "red tape" to go through when removing an individual from their employment position. (*Id.* at ¶ 101.) Odogba informed Virgil and Casey that the Defendants had changed her performance evaluation from "meets expectation" to "needs improvement" and that she was afraid of being punished for participating in the meeting and for her complaints against Zibolski and Jones opposing race discrimination and retaliation.

On or about June 28, 2012, Odogba filed a discrimination complaint with the EEOC against "the Defendant" alleging race discrimination and retaliation. (*Id.* at ¶ 104.)

On July 6, 2012, Zibolski suspended Odogba for a total of 33 days without pay to begin on July 25, 2012. The 33-day suspension was based on Odogba's participation in the April 27, 2012, investigatory meeting and her June 8, 2012, correspondence opposing race discrimination and retaliation. Odogba was an employee with permanent status in class during 2012. Wisconsin Statutes do not allow for suspensions of more than 30 days for such employees. In the documentation regarding the 33-day suspension, the Defendants made false allegations that Odogba's conduct violated work rules. Odogba has consistently disputed claims that she violated those work rules. Upon information and belief, similarly situated white employees have not received a 33-day suspension for violating the work rules that the Defendants claim Odogba violated; and similarly situated employees who have not raised concerns about race discrimination in the workplace have not received a 33-day suspension for violations of work rules the Defendants claim Odogba violated.

On July 12, 2012, Odogba filed a grievance opposing the 33-day suspension. On

July 20, 2012, the Defendants terminated Odogba's employment. The Defendants included false information in Odogba's termination letter, including allegations by Cyganek that Odogba needed a medical certificate for her June 15, 2012, absence. Cyganek disregarded the medical documentation Odogba had provided and disciplined her for taking sick leave. Upon information and belief, similarly situated white employees were informed by Casper, DNA Forensic Supervisor, on July 10, 2012, that they needed to provide a medical excuse if they were absent from work three or more consecutive days.

Odogba has consistently denied the allegations the Defendants claim as the bases for their decision to terminate her employment. Upon information and belief, similarly situated white employees have not had their employment terminated by the Defendants for violations of the work rules that the Defendants claim Odogba violated; and similarly situated employees who have not made internal complaints about discrimination and/or who have not filed discrimination complaints with the EEOC have not had their employment terminated by the Defendants for violations of the work rules that the Defendants claim Odogba violated.

On or about June 28, 2012, Odogba filed a discrimination charge with the EEOC alleging that the DOJ and the Lab discriminated against her because of her race, and retaliated against her for raising discrimination complaints in the workplace. On or about October 25, 2012, Odogba filed a discrimination charge with the EEOC alleging that the Lab discriminated against her because of her race, and retaliated against her for raising discrimination complaints in the workplace and filing an EEOC charge. Odogba obtained a "Right to Sue Letter" from the EEOC for both charges.

## Analysis

### *The Lab as a Suable Entity*

The Defendants contend that the Lab should be dismissed from this action because it is not a suable entity. While not addressing the substance of the Defendants' argument, Odogba asserts that her claims against the Lab under §§ 1983 and 1981 and Title VII should be allowed to proceed.

Rule 17(b) of the Federal Rules of Civil Procedure provides:

> Capacity to sue or be sued is determined as follows:
>
> (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
>
> (2) for a corporation, by the law under which it was organized; and
>
> (3) for all other parties, by the law of the state where the court is located, except that . . .

Thus, the Court must examine Wisconsin law to determine whether the Lab is a suable entity.

The Court begins by noting that Wis. Stat. § 165.75, the primary statutory section relating to state crime labs, is placed within the chapter of the statutes entitled "Department of Justice." *State v. Williams,* 253 Wis. 2d 99, 122, 644 N.W.2d 919, 930 (Wis. 2002). Section 15.25 of the Wisconsin Statutes creates the DOJ, which is under the direction and supervision of the state attorney general.

The primary purpose of the labs is to "provide technical assistance to local law enforcement officers in the various fields of scientific investigation in the aid of law enforcement." *Id*. (quoting Wis. Stat. 165.75(3)(a)). The duties of the crime lab include

- 14 -

maintaining services and employing the necessary specialists "for the recognition and proper preservation, marking and scientific analysis of evidence material in the investigation and prosecution of crimes." *Id*. at 122-23.

However, the crime lab is not autonomous. State crime lab employees may not undertake criminal investigations "except upon the request of a sheriff, coroner, medical examiner, district attorney, chief of police, warden or superintendent of any state prison, attorney general or governor." *State v. Franszczak*, 256 Wis. 2d 68, 70, 647 N.W.2d 396, 398 (Wis. Ct. App. 2002) (citing Wis. Stat. § 165.75(3)(b)). Moreover, the operation of the labs "shall" conform to the rules and policies established by the attorney general. Wis. Stat. § 165.75(4).

Section 165.75(b) of the Wisconsin Statutes refers to employees as persons in the service of the labs. However, the statute also explicitly states that "[t]he personnel of the laboratories shall consist of such employees as are authorized under [§] 20.922." Section 20.922 authorizes state agencies to appoint employees.

Odogba has not identified any Wisconsin statute indicating that the Lab is capable of suing or being sued. As indicated by the statutory scheme outlined above, the DOJ is the state agency of which the crime labs are a part, thus the Lab is not a suable entity separate from the DOJ. Therefore, it is dismissed from this action.

### *Viability of § 1983 Claims against DOJ & Official Capacity Claims against the Individual Defendants*

The Defendants seek dismissal of Odogba's § 1983 claims against the DOJ because it is not a person, and because the State's Eleventh Amendment sovereign

immunity bars Odogba's § 1983 claim against the DOJ and her official capacity claims against the Individual Defendants.

Odogba agrees to the dismissal of her claims for compensatory damages pursuant to §§ 1983 and 1981; however, she contends that when a state and/or its officials in their official capacities are sued for injunctive relief, the state and officials are considered to be persons under § 1983 because "official capacity actions for prospective relief are not treated as actions against the state."  (Pl.'s Resp. Mot Dismiss, 25-26 (citing *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985)) (ECF No. 9.)

Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, requires a showing that the plaintiff was deprived of a right secured by the Constitution or federal law, by a *person* acting under color of law.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 72 (1989) (Brennan, J., dissenting); *Padula v. Leimbach,* 656 F.3d 595, 600 (7th Cir. 2011). *Will* addressed whether the Michigan Department of State Police and/or its director acting in his or her official capacity was a "person" for the purposes of an action pursuant to § 1983.  In resolving a conflict among the circuit courts of appeals, the Supreme Court expressly held the word "person" in § 1983 does not include the States, or state officials acting in their official capacities.  *Will,* 491 U.S. at 71.  A suit against the latter, stated the Supreme Court, is not a suit against the official but rather is a suit against the official's office, and "is no different from a suit against the State itself."  *Id.*[7]

---

[7] Despite the breadth of *Wills'* holding, a footnote in the opinion states "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985)).

Review of the Wisconsin Statutes demonstrates that the DOJ is a part of the executive branch, which is an arm of state government. Chapters 13 through 22 of the Wisconsin state statutes are entitled "Organization of State Government;" Chapter 15 is entitled "Structure of the Executive Branch." Section 15.02 states that the principal administrative unit of the executive branch is a "department" or an "independent agency." As previously noted, the DOJ is a department created by Wis. Stat. § 15.25. Thus, based on *Will,* the DOJ and the individual state employees sued in their official capacities are not subject to suit for money damages under § 1983 because they are not "persons." *See Witte v. Wis. Dep't of Corr.,* 434 F.3d 1031, 1036 (7th Cir. 2006) (upholding dismissal of the Wisconsin Department of Corrections because it is not a person for purposes of § 1983), overruled on other grounds, *Hill v. Tangherlini,* 724 F.3d 965, 967 n.1 (7th Cir. 2013); *Williams v. Wisconsin,* 336 F.3d 576, 580 (7th Cir. 2003) ("[A] state is not a 'person' subject to a damages action under § 1983").

Although the Defendants also contend that the state's Eleventh Amendment sovereign immunity bars Odogba's § 1983 claims against the DOJ and the Individual Defendants in their official capacities, the Court should not address state sovereign immunity where the issue can be resolved by examining whether the defendants are "persons" under § 1983. *See Vt. Agency of Natural Res. v. U.S. ex rel. Stevens,* 529 U.S. 765, 779 (2000); *Parker v. Franklin Cnty. Cmty. Sch. Corp.,* 667 F.3d 910, 925-26 (7th Cir. 2012). "[A]ny constitutional problem that may exist is subordinate to the statutory deficiency." *Williams,* 336 F.3d at 580. The foregoing applies to Odogba's claims for damages against the DOJ and the Individual Defendants.

However, § 1983 permits official-capacity suits that seek prospective injunctive relief against state officials. *Id.* at 581 (citing *Will,* 491 U.S. at 71 n.10). "In *Will,* the Supreme Court made clear that 'state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because official capacity actions for prospective relief are not treated as actions against the State.'" *Id.* (quoting *Will,* 491 U.S. at 71 n.10). Therefore, to the extent Odogba seeks injunctive relief against the individual Defendants in their official capacities, § 1983 does not bar her claims.

Furthermore, under *Ex parte Young,* 209 U.S. 123, 159-60 (1908), official-capacity suits against state officials seeking prospective relief are not barred by the Eleventh Amendment. *Williams,* 336 F.3d at 581; *see also Edelman v. Jordan,* 415 U.S. 651, 677(1974); *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.,* 603 F.3d 365, 370 (7th Cir. 2010). In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Amundson ex rel. Amundson v. Wis. Dep't of Health Servs.,* 721 F.3d 871, 873 (7th Cir. 2013) (quoting *Verizon Md. Inc. v. Public Service Comm'n of Md.,* 535 U.S. 635, 645 (2002)).

Here, Odogba asserts that her injunctive relief claim against the Individual Defendants may proceed because her rights continue to be violated due to the fact that the Defendants terminated her employment in violation of federal law, and she seeks reinstatement and injunctive relief barring the Defendants from engaging in discrimination, retaliation, or allowing a hostile work environment to exist.

- 18 -

Odogba seeks prospective relief. However, there is case law indicating that the claimed violation is not considered on-going. *Sonnleitner v. York,* 304 F.3d 704, 717 (7th Cir. 2002). *Compare, Levenstein v. Salafsky,* 414 F.3d 767, 772 (7th Cir. 2005); *Power v. Summers,* 226 F.3d 815, 820 (7th Cir. 2000).

Based on the foregoing, Odogba's §§ 1981 and 1983 claims against the DOJ are dismissed. Her claims for money damages against the Individual Defendants in their official capacities are dismissed because they are not persons for the purposes of the statute, and her claims for injunctive relief against the Individual Defendants in their official capacities are granted because she does not allege continuing violations.

*Viability of §§ 1981 and 1983 Claims Against Van Hollen, St. John, Casey, O'Keefe, Jones, Champion, and Lewis in their Individual Capacities Due to Lack of Personal Involvement and/or Adverse Action*

The Defendants also seek dismissal Odogba's remaining individual capacity §§ 1981 and 1983 claims against Van Hollen, St. John, Casey, O'Keefe, Jones, Champion, and Lewis asserting that the Complaint does not allege these defendants' personal involvement and/or an adverse action against Odogba.[8]

"An individual cannot be held liable in a § 1983 action unless he caused or participated in [the] alleged constitutional deprivation." *Starzenski v. City of Elkhart,* 87 F.3d 872, 879 (7th Cir. 1996) (citations omitted); *George v. Smith,* 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."); *Hildebrandt v. Ill. Dep't of Natural Res.,* 347 F.3d 1014, 1039 (7th Cir.

---

[8]The Defendants do not challenge the §§ 1981 and 1983 individual claims against Cyganek or Zibolski for failure to allege personal involvement or adverse employment action(s).

2003) (personal involvement requirement applies to §§ 1981 and 1983 claims). Further, individual liability cannot be based on an official's supervisory role over another. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 699 n.58 (1978); *McKinnon v. City of Berwyn,* 750 F.2d 1383, 1390 (7th Cir. 1984) (holding that liability will not be imposed vicariously under a theory of *respondeat superior*; the defendant must be personally at fault).

Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. A causal connection or an affirmative link between the misconduct complained of and the official sued is necessary. *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983). "Section 1983 does not establish a system of vicarious responsibility. . . . Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch,* 555 F.3d 592, 593-94 (7th Cir. 2009) (citation omitted). In fact, even the indirect approval of a subordinate officer's actions by his superior would not in itself establish the superior's liability absent participation in the actual constitutional wrongdoing. *Cygnar v. City of Chicago,* 865 F.2d 827, 847 (7th Cir. 1989).

The failure to take corrective action does not alone give rise to a claim under §§ 1981 and 1983. *Soderbeck v. Burnett Cnty., Wis.,* 752 F.2d 285, 293 (7th Cir. 1985); *Burks,* 555 F.3d at 596 (the "contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, *Monell's* rule that public employees are responsible for their own misdeeds but not for anyone else's."). If supervisory liability is predicated on failure to act, the plaintiff must

show "an extremely high degree of culpability." *Lenard v. Argento,* 699 F.2d 874, 885 (7th Cir. 1983). Failure to control is not actionable at all "absent a showing that the official either encouraged the specific incident of misconduct or in some way directly participated in it." *Id.* (internal quotations omitted).

In the context of a Rule 12(b)(6) motion, a plaintiff must allege enough facts to show that a defendant was personally involved in a constitutional deprivation. *Moore v. State of Ind.,* 999 F.2d 1125, 1129 (7th Cir. 1993). In addition, in a discrimination claim, a plaintiff must allege to have suffered from an "adverse employment action." *See Tamayo,* 526 F.3d at 1084. "[C]ourts have found the criteria for materially adverse employment action to be met [where the] employee's compensation, benefits or other financial terms of employment are diminished." *Tart v. Ill. Power Co.,* 366 F.3d 461, 475 (7th Cir. 2004) (internal quotations omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat. Bank & Trust Co. of Ind.,* 993 F.2d 132, 136 (7th Cir. 1993).

For retaliation purposes, a "materially adverse action" is required to be alleged, which is "one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Silverman v. Bd. of Educ. of City of Chi.,* 637 F.3d 729, 740 (7th Cir. 2011) (internal quotations omitted). Notably,

[f]ederal law protects an employee only from retaliation that

> produces an injury, and, therefore, an employer's retaliatory conduct is actionable only if it would be materially adverse to a reasonable employee. *Burlington N. [& Santa Fe Ry. Co. v. White]*, 548 U.S. 53, 68-69 . . . (2006). Title VII "does not set forth 'a general civility code for the American workplace,' " *id.* at 68, (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 . . . (1998)), and it does not protect an employee from trivial harms, petty slights, nor minor annoyances, id.; *see also Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir. 1996) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.").

*Stephens v. Erickson,* 569 F.3d 779, 790 (7th Cir. 2009). The inquiry is context-driven, and the court of appeals for this circuit has declined to rule categorically that warnings cannot be adverse actions. *See Roney v. Ill. Dep't of Transp.,* 474 F.3d 455, 462 (7th Cir. 2007) (assessing two disciplinary actions and concluding, based on the context, that they were not adverse); *Pantoja v. Am. NTN Bearing Mfg. Corp.,* 495 F.3d 840, 849 (7th Cir. 2007).

*Van Hollen & St. John*

The Defendants assert that Odogba's §§ 1981 and 1983 claims against Van Hollen and St. John should be dismissed because the Complaint's allegations are insufficient to establish that either official was personally involved in the alleged discriminatory actions and/or any adverse action against her. Van Hollen is the state attorney general and St. John is the deputy attorney general — they are the top of the DOJ's organizational chart.

Viewed in the light most favorable to Odogba, sometime after the September 2011 meeting between Odogba and O'Donnell to discuss Odogba's formal complaint against O'Keefe regarding the August 2011 letter of direction and his treatment of her during the

August 2011 meeting, O'Donnell conveyed the information to the Wisconsin Attorney General's office. Thereafter, St. John met with O'Keefe who agreed to withdraw the letter of direction.

On March 8, 2012, Van Hollen awarded Odogba merit-based discretionary compensation. On May 30, 2012, Odogba sent Van Hollen and St. John copies of the materials regarding her discrimination complaint against Zibolski.

Both St. John's meeting with O'Keefe and Van Hollen's compensation award were favorable actions towards Odogba, and neither act establishes St. John's or Van Hollen's personal involvement in the discriminatory conduct. Furthermore, St. John's and/or Van Hollen's knowledge of the May 30, 2012, information Odogba provided, without more, is insufficient to establish personal involvement in the discriminatory or retaliatory conduct. *See Burks,* 555 F.3d at 595 (stating that public officials do not have a free floating obligation to put things to rights).

In her brief, Odogba also contends that Van Hollen was aware of her decision to file an EEOC charge and that the Attorney General's office was also aware she filed an EEOC charge because the Attorney General's office represented the "Defendant" throughout the EEOC process. (Pl.'s Resp. Mot. Dismiss, 14.) The statements in the brief are not alleged in the Complaint. Moreover, even if alleged, mere knowledge of Odogba's EEOC charges is insufficient to establish personal involvement. *See Burks,* 555 F.3d at 595.

Therefore, Odogba's §§ 1981 and 1983 individual capacity claims against Van Hollen and St. John are dismissed.

*Casey*

The Defendants assert that the individual capacity §§ 1981 and 1983 claims against Casey should be dismissed because the allegations of the Complaint are insufficient to establish her personal involvement in the alleged discriminatory actions and/or any adverse action. Odogba counters that as manager for human resource services Casey had control over employees, and Odogba disclosed to Casey her concerns about discrimination, harassment, retaliation and her fear that she would be retaliated against for participating in the meeting. (Pl.'s Resp. Mot. Dismiss, 16.) Odogba contends that rather than prevent the Defendants' misconduct against her, Casey allowed it to continue.

Casey had personal knowledge of Odogba's complaints; however, there is no allegation that Casey was involved in any discriminatory or retaliatory conduct. Mere knowledge does not give rise to liability. *See Burks,* 555 F.3d at 595. Thus, Odogba's §§ 1981 and 1983 claims against Casey in her individual capacity are dismissed.

*O'Keefe*

The Defendants seek dismissal of Odogba's §§ 1981 and 1983 individual capacity claims against O'Keefe for failure to allege personal involvement and/or an adverse action.

The allegations are that in early June 2011 Odogba made O'Keefe (and others) aware of her concern regarding race-based assignment of DNA analysts in the Lab. At the August 2011 meeting, O'Keefe issued Odogba a letter of direction threatening her with disciplinary actions and threatening her continued employment with the State for raising her concerns about racial discrimination. O'Keefe also "denigrated Odogba" and made

statements to the effect that by the time he was done with anyone who had filed a complaint, the complaint was dropped, and that Odogba was "playing the race card." Lewis also claimed that O'Keefe made changes to Odogba's performance evaluation.

The Complaint sufficiently establishes O'Keefe's personal knowledge of Odogba's discrimination complaint. O'Keefe took action against Odogba by his issuance of the letter of direction. While the letter of direction was later withdrawn by O'Keefe, Lewis also claimed that his office adversely altered Odogba's performance evaluation. The determination of whether these actions are adverse employment actions must be made in context of this case. *de la Rama v. Ill. Dep't of Human Servs.,* 541 F.3d 681, 686 (7th Cir. 2008). It is plausible that O'Keefe was personally involved in the adverse employment actions.[9] At this pleading stage, the Defendants have not established that Odogba has failed to state plausible §§ 1981 and 1983 claims against O'Keefe in his individual capacity.

*Jones*

The Defendants request that Odogba's §§ 1981 and 1983 individual capacity claims against Jones be dismissed for lack of personal involvement and/or an adverse employment action. Jones received Odogba's June 7, 2011, email relating her concern about race-based assignments of DNA analysts, and he participated in the August 2011 meeting with Odogba at which O'Keefe issued the letter of direction. Jones participated in the April 27, 2012, meeting addressing Odogba's complaint against Lewis. He also

---

[9] In her brief, Odogba states that the O'Keefe, Jones, and Champion's letters of direction were used to justify decisions to discipline and terminate Odogba's employment. (Pl.'s Resp. Mot. Dismiss, 21.) There is no such allegation in the complaint.

was aware that Odogba felt Zibolski was harassing her and retaliating against her because of the Lewis complaint.

On June 6, 2012, Jones issued a letter of direction[10] to Odogba because she had filed complaints opposing discrimination; had provided audio evidence to Van Hollen, St. John, and Cyganek showing that Zibolski falsified information from the April 27, 2012, investigatory meeting; and had filed the grievance opposing her May 2012 one-day suspension. Jones also threatened to discipline Odogba for copying Van Hollen and St. John on complaints opposing discrimination and for providing audio evidence to Van Hollen, and ordered Odogba to immediately cease sending such communications. Jones' actions are sufficient to establish his personal involvement in the retaliatory conduct of which Odogba complains, and they may rise to the level of adverse employment action. Construing the allegations in the light most favorable to Odogba, her §§ 1981 and 1983 claims against Jones are plausible and will not be dismissed for failure to state a claim.

### Champion

In February 2010 Champion issued a pre-disciplinary letter to Odogba for not reporting to work on December 9, 2009, when state offices were closed due to inclement weather. Champion was a recipient of Odogba's June 7, 2011, email relating concern about the race-based assignments of DNA analysts, and she participated in the August 2011 meeting at which O'Keefe issued the letter of direction. In March 2012, Champion

---

[10] Again the Court notes that Odogba's brief states that the Jones letter of direction was used as part of the basis for justifying the decisions to discipline and terminate Odogba's employment. (Pl.'s Resp. Mot. Dismiss, 21.)

received Odogba's complaint against Lewis. Champion also directed all supervisors not to allow Odogba time off for any reason and to immediately report problems with Odogba to Zibolski. On June 6, 2012, the same day that Odogba filed a grievance with Champion opposing her one-day suspension, Champion forwarded the grievance to Jones.

Champion treated Odogba differently than white employees by sending her a pre-disciplinary letter regarding her absence on December 9, 2009.[11] She also had personal knowledge of Odogba's claims of race-based assignments and retaliation. She also is alleged to have issued the directive instructing supervisors to deny Odogba's requests for time off and to inform Zibolski promptly if Odogba caused any problems. While Champion's actions may not rise to the level of adverse employment actions, this Court lacks context for making that determination. Thus, Odogba's §§ 1981 and 1983 claims against Champion state a plausible claim and will not be dismissed for failure to state a claim.

*Lewis*

The Defendants seek dismissal Odogba's individual capacity claims under §§ 1981 and 1983 against Lewis. Lewis was Odogba's immediate supervisor. Odogba initially spoke to Lewis about race-based team assignments of DNA analysts in the Lab. Lewis also received Odogba's June 7, 2011, email about that concern. Lewis also was aware that O'Keefe's office had provided a revised 2011-2012 performance evaluation

---

[11]Odogba's brief states that the Champion letter of direction was part of the basis used to justify the decisions to discipline and terminate Odogba's employment. (Pl.'s Resp. Mot. Dismiss, 21.)

which changed Odogba's evaluation from "meets expectation" to "needs improvement," and advised Odogba of that action.

Lewis was Odogba's immediate supervisor and was the first person Odogba approached with her concerns regarding race-based discrimination in the assignments of DNA analysts. Lewis also was aware that O'Keefe revised her earlier evaluation of Odogba's performance. However, Lewis is not alleged to have personally engaged in any misconduct. *See Burks,* 555 F.3d at 595. Thus, the Defendants' motion to dismiss Odogba's §§ 1981 and 1983 claims against Lewis is granted.

*Title VII Claims*

The Defendants assert that Odogba's Title VII claims against the Individual Defendants and the Title VII punitive damages claim should be dismissed. Odogba concurs.

This portion of the Defendants' motion is granted because it is well established that Title VII claims cannot be brought against individuals in their individual capacity. *See, e.g., Williams v. Banning,* 72 F.3d 552, 554 (7th Cir. 1995). Furthermore, official capacity claims against individual defendants are unnecessary and redundant because Odogba is suing her employer, the DOJ. Additionally, Title VII prohibits punitive damages against government defendants. *Passananti v. Cook Cnty.,* 689 F.3d 655, 677 (7th Cir. 2012) (citing 42 U.S.C. § 1981a(b)(1) (providing that a Title VII complainant may recover punitive damages "against a respondent (other than a government, government agency or political subdivision)"). The DOJ is a governmental entity. Odogba's Title VII claims against the individual defendants and the Title VII punitive

damages claim are dismissed.

*Inter-corporate Conspiracy Doctrine & §§ 1985 and 1986 Claims*

The Defendants assert that Odogba's claims pursuant to §§ 1985 and 1986 fail to state a claim based on the inter-corporate conspiracy doctrine.

Section 1985(3), although not a source of substantive rights, is a remedial statute that prohibits conspiracies to deprive a person of rights guaranteed by the Constitution or federal law. *Keri v. Bd. of Trs. of Purdue Univ.,* 458 F.3d 620, 641-42 (7th Cir. 2006), overruled on other grounds by *Tangherlini,* 724 F.3d at 967 n.1. A plaintiff must allege four elements to make out a valid cause of action under § 1985(3): (1) a conspiracy; (2) a purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to his person or property or a deprivation of any right or privilege of a citizen of the United States. *Triad Assocs., Inc. v. Chi. Hous. Auth.,* 892 F.2d 583, 591 (7th Cir. 1989), overruled on other grounds, *Bd. of Cnty. Comm'rs, Wabaunsee Cnty. v. Umbehr,* 518 U.S. 668, 673 (1996)

Corporate agents' actions are considered outside the protection of the intra-corporate conspiracy doctrine only if they act outside the scope of their employment. *Keri,* 458 F.3d at 642. Corporate agents act outside the scope of employment when their actions are shown to be motivated solely by personal racial bias. *Id.*

Odogba claims that the exception applies here because "[i]t is plausible that the individually named Defendants have acted with bias in their treatment" of her and they "may have a bias towards" her. (Pl.'s Resp. Mot Dismiss, 29.) Odogba alleges that

O'Keefe told her she was playing "the race card" when talking with her about raising concerns regarding race-based team assignments of DNA analysts. (Compl. ¶¶ 38, 41.) However, none of her allegations refer to the individual defendants' actions being based solely out of a personal racial bias.

Furthermore, the function of a § 1985(3) conspiracy claim is to "permit recovery from a private actor who has conspired with state actors." *Fairley v. Andrews,* 578 F.3d 518, 526 (7th Cir. 2009) Pleading such a claim against defendants where all defendants are state actors who are also being sued under § 1983 is "superfluous." *Id.* (since all defendants were state actors, plaintiff's § 1985(3) claim did not add anything to § 1983 claims "except needless complexity").

Since Odogba has not properly alleged the bias exception, the intra-corporate conspiracy doctrine bars her § 1985 conspiracy claim. Without a valid § 1985 claim, her § 1986 claim must also be dismissed. *Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008). Therefore, the Defendants' motion to dismiss is granted as to Odogba's § 1985 and § 1986 claims.

<em>Type of Dismissal</em>

The Defendants request that Odogba's claims be dismissed with prejudice. However, "plaintiffs enjoy leave to amend whenever 'justice so requires' and, as a matter of course, almost always get an opportunity to amend their complaints at least once." *Luevano,* 722 F.3d at 1024 (citing *Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011) ("[a] plaintiff ordinarily retains the ability to amend his complaint once as a matter of right, even after a court grants a motion to dismiss."); *Bausch v. Stryker Corp.,* 630

F.3d 546, 562 (7th Cir. 2010) ("[a] plaintiff is entitled to amend the complaint once as a matter of right, Fed. R. Civ. P. 15(a), and a court should 'freely give leave [to file an amended complaint] when justice so requires.' Fed. R. Civ. P. 15(a)(2)."); *Foster v. Deluca,* 545 F.3d 582, 584 (7th Cir. 2008) ("[a]n order dismissing the original complaint normally does not eliminate the plaintiff's right to amend once as a matter of right.")).

Despite the general rule, leave to amend may be denied when amendment of the Complaint would be futile. *Bogie v. Rosenberg,* 705 F.3d 603, 608 (7th Cir. 2013) (citing *Garcia v. City of Chicago,* 24 F.3d 966, 970 (7th Cir.1994)). Amendment of the Complaint with respect to Odogba's claims against the Lab; the §§ 1981 and 1983 claims against the DOJ, and the Individual Defendants in their official capacities; and the Title VII claims against the Individual Defendants and/or Title VII claims for punitive damages against the DOJ would be futile. Therefore, the dismissal of those claims is with prejudice. In all other respects, the dismissal is without prejudice.

*Summary*

The following causes of action and defendants remain in this action: Title VII (first cause of action) against the DOJ, and the §§ 1981 and 1983 individual capacity claims against Cyganek, O'Keefe, Zibolski, Jones, and Champion (first, second, and third causes of action).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

The Defendants' motion to dismiss (ECF No. 6) is **DENIED** with respect to Odogba's §§ 1981 and 1983 claims against O'Keefe, Jones, and Champion and it is

**GRANTED** in the following respects:

The Lab is **DISMISSED** from this action with prejudice**;**

Odogba's §§ 1981 and 1983 claims against the DOJ, and the Individual Defendants in their official capacities are **DISMISSED** with prejudice;

Odogba's §§ 1981 and 1983 claims against Van Hollen, St. John, Casey, Champion, and Lewis in their individual capacities are **DISMISSED**;

All the Individual Defendants in both their individual and official capacities are **DISMISSED** from Odogba's Title VII claims with prejudice; and

Odogba's Title VII claims for punitive damages are **DISMISSED** with prejudice; and

Odogba's §§ 1985 and 1986 claims (fourth and fifth causes of action) are **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 19th day of May, 2014.

**BY THE COURT:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**